Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 7445 | DATE | 3/30/2000 |
| CASE TITLE | Unique Coupons, Inc. vs. Northfield Corporation | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion for a preliminary injunction is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 31 2000 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 25 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | MAR 31 2000 date mailed notice | |
| WAP | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIQUE COUPONS, INC., | |
| Plaintiff, | Case No. 99 C 7445 |
| v. | Judge Harry D. Leinenweber |
| NORTHFIELD CORPORATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This is a patent infringement suit brought by Unique Coupons, Inc. ("Unique") against Northfield Corporation ("Northfield"), alleging infringement of Unique's two patents: U.S. Patent No. 5,079,901 (the "'901 patent") and No. 5,588,280 (the "'280 patent"), both relating to a machine that inserts coupons into packaging. Currently before the Court is Unique's motion for a preliminary injunction pursuant to 35 U.S.C. § 283 to enjoin Northfield from making, using, or selling Northfield's allegedly infringing Model 3200 coupon inserter.

DOCKETED
MAR 3 1 2000

### BACKGROUND

The parties are not strangers to this court or to each other. Before this action, Unique previously brought suit against Northfield seeking to enforce its rights under the very same patents at issue in this case, but with respect to Northfield's Model 1600 coupon inserter. On September 28, 1998, Judge George M.



Marovich construed the relevant claims of both the '901 patent and '280 patent as a matter of law, and also held both patents valid and enforceable. Unique Coupons, Inc. v. Menasha Corp., 96 C 7532, slip op. (N.D. Ill. Sept. 28, 1998)(the "Marovich Order"). The case was subsequently reassigned to Judge Samuel P. King who, after a bench trial, held that Northfield's Model 1600 infringed Claim 1 of the '901 patent and Claim 20 of the '280 patent under the doctrine of equivalents. Unique Coupons, Inc. v. Menasha Corp., 96 C 7532, slip op. (N.D. Ill. Aug. 30, 1999)(the "King Order"). In light of those rulings, Unique now seeks to enjoin Northfield's next generation coupon inserter, the Model 3200.

## DISCUSSION

Injunctive relief in patent infringement actions is authorized by 35 U.S.C. § 283. A preliminary injunction, however, is considered an extraordinary remedy for which the movant bears the full burden of demonstrating entitlement. Nutrition 21 v. United States, 930 F.2d 867, 869 (Fed. Cir. 1991). Ultimately, whether a preliminary injunction is appropriate turns upon the court's evaluation and balancing of four factors: (1) the movant's reasonable likelihood of success on the merits; (2) any irreparable harm the movant will suffer if preliminary relief is not granted; (3) the balance of hardships between the parties; and (4) the impact of the injunction on the public interest. Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1451 (Fed. Cir. 1988); Illinois Tool

Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 681 (Fed. Cir. 1990). In this case, upon full consideration of the aforementioned factors and in light of the submission of the parties, the Court finds that injunctive relief is inappropriate at this juncture.

### Likelihood of Success

Generally, likelihood of success on the merits is found where the movant shows a likelihood of success with respect to both validity and infringement. Hybritech, Inc. v. Abbott Lab., 849 F.2d 1446, 1451 (Fed. Cir. 1988). In this case, however, the question of validity has already been resolved in favor of Unique in its previous case against Northfield. Northfield is, therefore, collaterally estopped from re-litigating the issue here. See Marovich Order at 14; Zip Dee, Inc. v. Dometic Corp., 905 F.Supp. 535, 537-78 (N.D. Ill. 1995); Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1323 (Fed. Cir. 1987). As such, the Court will only address the question of infringement.

### Res Judicata

As a threshold matter, the Court finds that Unique cannot rely upon the doctrine of res judicata to circumscribe an independent infringement analysis of Northfield's Model 3200 by this Court. Unique contends that Northfield cannot contest the issue of infringement in this case since the Model 3200 is similar to the Model 1600, which has already been found to infringe. In so arguing, however, Unique misapplies the doctrine of res judicata.

"Res judicata is of the same effect with respect to a final decision between the parties as to the <u>identical</u> dispute." <u>Del Mar Avionics, Inc.</u>, 836 F.2d at 1324 (emphasis added). Therefore, in the context of an infringement suit, "[a] device not previously before the court, and shown to differ from those structures previously litigated, requires determination on its own facts." <u>Id.</u>

Here, <u>res judicata</u> does not apply because the Model 3200 is not identical to the Model 1600, the sole device at issue in the prior litigation. Acknowledging that the Model 3200, in contrast to the Model 1600, lacks a "container sensor" and has additional "high speed outfeed rolls," Unique, nevertheless, maintains that <u>res judicata</u> is appropriate since such differences are not relevant to an infringement determination. (Pltf. Mot. at 7). But whether existing differences are material or immaterial for purposes of infringement is wholly besides the point for <u>res judicata</u> analysis. The Court agrees that infringement may not be avoided by merely adding features or components that is not required by the patent at issue. <u>Northern Telecom, Inc. v. Datapoint Corp.</u>, 908 F.2d 931, 945 (Fed. Cir. 1990). The Court also notes that if Unique had chosen to bring a contempt proceeding before Judge King alleging violation of that court's permanent injunction order, the applicable standard would have been whether there was a "colorable difference" between the Model 3200 and the Model 1600 as opposed to

strict identity. See e.g., KSM Fastening Systems, Inc. v. H.A. Jones Co., 776 F.2d 1522, 1526 (Fed. Cir. 1985). But as long as Unique insists upon invoking the doctrine of res judicata, strict identity of claims is required. See Del Mar Avionics, Inc., 836 F.2d at 1324. Therefore, because the parties do not dispute that certain differences exist between the Model 3200 and Model 1600, the Court must address the infringement issue de novo.

**Literal Infringement**

Unique contends, in the alternative, that the Model 3200 literally infringes Claim 1 of the '901 patent and Claim 20 of the '280 patent. Determination of infringement involves a two-step process: first, a construction of the relevant claims, and second, a determination of whether the claims, as properly construed, read on the accused device or product. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). Literal infringement will be found where the patent holder demonstrates that each and every element or limitation of the relevant claim is literally met in the accused device. See Novo Nordisk of North America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1371 (Fed. Cir. 1996).

Both parties agree that much of the necessary claim construction has already been done by the previous court in the parties' prior dispute, and, as such, is binding here. Del Mar Avionics, 836 F.2d at 1324. Both Claim 1 of the '901 patent and

Claim 20 of the '280 patent describe a device utilizing "bursting" technology to insert coupons into packages containing household goods - such as cereal - with a high level of accuracy and speed. (King Order at 5-7). The patented invention works with a continuous web or bandolier of coupons, connected to one another by a perforated edge, which is then "burst," one-by-one, into a steady stream of packages. (Id.) Both Claim 1 of the '901 patent and Claim 20 of the '280 patent describe the device and its function step-by step, the first step involving the provision or generation by the device of a "timing signal":

> Providing a timing signal related to said predetermined time at which said forwardmost coupon is to be positioned at said predetermined location. (Claim 1, Step 1, '901 patent).

> Sensing the movement of the containers relative to a predetermined point of insertion and generating a timing signal based upon the movement of the containers, the timing signal pertaining to when one of the containers will be at the predetermined point of insertion. (Claim 20, Step 1, '280 patent).

In other words, both claimed methods begin "by obtaining a 'timing signal' based on the location of the package, or container." King Order at 18.

The Court finds that Unique fails to show a likelihood of literal infringement because it does not identify a corresponding "timing signal" element in Northfield's Model 3200. The evidence thus far is uncontroverted that the Model 3200 is not a stand-alone

device, but, rather, requires connection to a master device provided by the end-user. (Kuehl Dep. at 23, 66-67). The Model 3200 relies upon this master device to determine when conditions are right for the start of the coupon insertion process and to signal it to start. (Id. at 28-30). Therefore, the Model 3200 cannot provide, generate, or obtain any "timing signal" of its own; it depends entirely upon the direction of the master device provided by the customers.

Unique's contention that the Model 3200 "requires" a timing signal of some sort in order to initiate its process simply does not go to the issue of whether the "timing signal" limitation, as properly construed, reads on the Model 3200. (Pltf. Reply at 8). It very well may be that the Model 3200 requires receipt of a "timing signal" from the master device, but that is not what the claims literally require. Judge King held that the claims disclose a method whereby the patented device begins the coupon insertion procedure "by <u>obtaining</u> a 'timing signal'" – as opposed to "receiving" a timing signal – indicating that the device itself must be able to assess whether the conditions are ripe to begin the insertion procedure. <u>King Order</u> at 18 (emphasis added). This construction is consistent with the plain language of the claims. <u>Bell & Howell Document Management Products Co. v. Altek Systems</u>, 132 F.3d 701, 705 (Fed. Cir. 1997)(claim construction begins with the intrinsic evidence). Claim 1 of the '908 patent specifically

provides a "method comprising the steps of: <u>providing</u> a timing signal. . . ." (emphasis added). Claim 20 of the '280 patent also describes a method that includes the step of "sensing the movement of the containers relative to the predetermined point of insertion and <u>generating</u> a timing signal. . . ." (emphasis added). In other words, the device itself must "provide" or "generate" the timing signal which begins the process of coupon insertion.

The Court also finds Unique's pictorial depiction of the Model 3200 in which it identifies something called a "timing signal wire" wholly unpersuasive. (Pltf. Mot. at 4). Unique provides no explanation of how this wire corresponds to the "timing signal" limitation of the relevant patent claims. Furthermore, evidence indicates that this "timing signal wire" is the means by which the Model 3200 receives the directions of the master device and does not generate any signals of its own. (Kuehl dep. at 43-44). Therefore, because Unique fails to identify a timing signal element in the Model 3200, the Court cannot hold that there is a likelihood of literal infringement.

### Infringement Under the Doctrine of Equivalents

Unique also alleges infringement under the doctrine of equivalents. Under a doctrine of equivalents, a device that does not literally infringe may nonetheless infringe if there is "equivalence" between the elements of the accused device and the claimed elements of the patented invention. See <u>Warner-Jenkinson</u>

Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). Elements are deemed "equivalent" if the patent holder demonstrates that the differences between the elements of the accused device and the elements of the relevant claims are only insubstantial. See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998).

Unique fails to demonstrate a likelihood of infringement under the doctrine of equivalents because it does not point to any equivalent structure or component in the Model 3200 corresponding to the "timing signal" element of both Claim 1 of the '901 patent and Claim 20 of the '280 patent. Unique contends that the Model 3200 performs the same function in the same manner as the patented "timing signal" element through the use of an equivalent "container sensor" whose signal initiates the coupon insertion process. (Pltf. Mot. at 11). But Unique presents absolutely no evidence that the Model 3200 has such a "container sensor." Unique's own illustration of the Model 3200 does not identify such a container sensor and the testimony establishes that the Model 3200 has no "container senor" of its own. (Kuehl Dep. at 23). Again, as discussed above, the Model 3200 cannot sense on its own any of the conditions necessary to begin the coupon insertion process. Therefore, the Court is at a loss as to what structure or component of the Model 3200, Unique believes to be equivalent to the "timing signal" element. Without more, the Court

must reject Unique's generalized and unsubstantiated assertion of equivalence and hold that Unique does not show a likelihood of infringement.

### Irreparable Harm

Because Unique has not made a strong showing on the issue of infringement, it is not entitled to a presumption of irreparable harm. See Eli Lilly and Co. v. American Cyanamid Co., 82 F.3d 1568, 1578 (Fed. Cir. 1996). Neither does Unique make a sufficient showing of irreparable harm apart from the presumption. While "the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole," Hybritech Inc. v. Abbott Lab., 849 F.2d at 1456-57, the courts, however, also have not afforded any "presumption that money damages will be inadequate in connection with a motion for an injunction pendente lite." Nutrition 21 v. United States, 930 F.2d 867, 872 (Fed. Cir. 1991).

Here, Unique seeks protection for potential loss of goodwill and market share due to Northfield's sale of the Model 3200. Unique claims that Unique and Northfield are currently the only companies selling coupon inserters utilizing the "bursting" technology. (Pltf. Reply at 13). Citing Polymer Technologies, Inc. v. Bridwell, H.A., 103 F.3d 970, 975-76 (Fed. Cir. 1996), Unique argues that even if Northfield is eventually enjoined after trial from making further inroads in the market, Unique will likely

never enjoy the fullness of its exclusive position as customers will not want to change established relationships and may resent the corresponding higher prices that an exclusive position entails. (Id.)

But Unique's reliance on Polymer Technologies, Inc., is misplaced. In that case, the movant was granted a presumption of irreparable harm that the defendant was unable to rebut. Id. at 975-96. Here, in the absence of a clear likelihood of infringement, Unique maintains the full burden of showing that it would suffer irreparable harm. See Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1272 (Fed. Cir. 1985). Unique fails to meet this burden. Unique does not provide sufficient evidence regarding the size and nature of the entire coupon insertion market, price structures, and absence or presence of alternatives that would support the kind of irreparable harm Unique claims. Furthermore, where, as here, the likelihood of infringement has not been shown, a significant question is raised as to whether the loss of exclusive position is really the result of infringing activity or legitimate competition and innovation. As such, the Court rejects Unique's contentions of irreparable harm.

### Balance of Hardships

"Because the court must balance the hardships, at least in part in light of its estimates of what is likely to happen at trial, it must consider the movant's showing of likelihood of

success." Illinois Tool Works, Inc. v. Grip-Pak, Inc., 906 F.2d 679, 683 (Fed. Cir. 1990). Here, because Unique fails to show a strong likelihood of success on the merits and irreparable injury, the Court finds that the equities tip in favor of Northfield. Id. Unique does not take issue with Northfield's claim that it is a small company and the Model 3200 is its primary product. As such, injury to Northfield will be great if an injunction is issued in error. While those who elect to build a business on an infringing product cannot object to the issuance of an injunction, Windsurfing International, inc. v. AMF, Inc., 782 F.2d 995, 1003 n. 12 (Fed. Cir. 1986), given the fact that Unique only made a weak showing of infringement, the size and impact of the injunction on Northfield may be given more weight. Illinois Tool Works, Inc., 906 F.2d at 684.

### Public Interest

Finally, while protection of patent rights is clearly in the public interest, the public interest also consists of maintaining the right of a legitimate competitor to innovate and compete. Illinois Tool Works, Inc., 906 F.2d at 684. The interest in competition and innovation prevails here, where, Unique has failed to show a clear likelihood of infringement. Id.

In sum, having given full consideration to the necessary factors in light of the submission of both parties, the Court finds

that the evidence presented thus far does not warrant the issuance of a preliminary injunction.

### CONCLUSION

For the reasons stated herein, the Plaintiff's motion for a preliminary injunction is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: March 30, 2000